UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RODNEY KINTA JENKINS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-783 |
| DORELL BASS, *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 82] filed by the defendants, Sgt. Dorell Bass and Officer Lanre Idowu, on October 22, 2024. The plaintiff, Rodney Kinta Jenkins, a prisoner without a lawyer, is proceeding in this case on two Eighth Amendment claims against Sgt. Bass and Officer Idowu: (1) "for failing to protect him from the dangers of a smoke-filled cell on December 17, 2021;" and (2) "for failing to provide Jenkins medical aid following severe smoke inhalation on December 17, 2021[.]" [DE 22 at 4]. Defendants filed a motion for summary judgment. [DE 82]. Jenkins filed a Response [DE 97], and Defendants filed a Reply [DE 102]. The Motion for Summary Judgment is now fully briefed and ripe for ruling.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

*Discussion*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Prison officials who "expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights." *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison employee leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). On the subjective prong, the prisoner must show that the defendant acted with deliberate indifference to his health or safety. *Id.*; *Board v.*

2

*Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to support an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Rather, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). Thus, a prison official that takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997); *see also Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under § 1983, even though he ultimately failed to prevent the injury).

1. <u>Failure to protect</u>

Jenkins is proceeding against Sgt. Bass and Officer Idowu for violating his Eighth Amendment rights by failing to protect him from the dangers of a smoke-filled cell on December 17, 2021. The parties provide evidence of the following facts.

On December 17, 2021, Sgt. Bass and Officer Idowu both worked the night shift at Indiana State Prison ("ISP"). [DE 83-13 at 1; DE 83-14 at 1]. The night shift ran from

6:00 p.m. on December 16 until 6:00 a.m. on December 17. *Id.* Around 3:00 p.m. on December 16, before the defendants' shifts began, inmate James Griffith got into an argument with correctional staff because he had not been provided his diet lunch tray. [DE 83-1 at 29-30]. Following the argument, Griffith began repeatedly threatening to set his cell on fire if he did not receive his tray. *Id.*[1] The parties disagree over whether the defendants were made aware of Griffith's threats to set his cell on fire once their shifts began.[2]

Around 12:11 a.m. on December 17, Sgt. Bass, Officer Idowu, and Officer Gbjumo were in the officers' station when Sgt. Bass saw flames coming out of Griffith's cell. [DE 83-13 at 1; DE 83-5 at 1]. Sgt. Bass and Officer Idowu "immediately" went to Griffith's cell with fire extinguishers and called a Signal 10-71, which is a fire alarm code. [DE 83-13 at 2; DE 83-14 at 1]. Sgt. Bass put the fire out and gave Griffith orders to comply with restraints, but Griffith did not respond. [DE 83-13 at 2]. Sgt. Bass then notified Checkpoint to call a Signal 3000 emergency and instructed Officer Gbjumo to attempt to open Griffith's cell door, but he could see Griffith was using his body weight to hold the door shut. *Id.* The cell was also barricaded, and Griffith's pad lock was locked on the inside and connected to a chain, so Sgt. Bass requested a bolt cutter. *Id.* A bolt cutter

---

[1] Griffith and Jenkins were housed in the same cellhouse, and Griffith's cell was two floors below and one cell over from Jenkins' cell. [DE 83-1 at 26-28; DE 97 at 1].

[2] Sgt. Bass attests "I heard no warning from Offender James Griffith that he was going to set his cell on fire or that he was requesting a diet tray." [DE 83-13 at 1]. Jenkins, alternatively, attests that once Sgt. Bass' shift began, he heard Griffith tell Sgt. Bass "I'll set this cell on fire if I don't get my tray." [DE 64 at 5]. Jenkins also argues other inmates warned Sgt. Bass to take Griffith's threat seriously because he had started fires in the past. [DE 97 at 3]. Construing the facts in the light most favorable to Jenkins, the court accepts as true that Sgt. Bass was aware of Griffith's threat to set his cell on fire.

4

was retrieved, and a correctional officer attempted to cut the chain connected to the pad lock. *Id.* Once the lock was removed, the cell door was opened, and Sgt. Bass entered the cell and removed Griffith. *Id.* Griffith appeared unresponsive and was placed on a medical gurney and escorted to the custody hall. *Id.* Inmate firefighters arrived and cleared the remaining smoke from the cellhouse using exhaust fans and other fans brought to the unit. *Id.* Additionally, one inmate was allowed out of his cell to open windows so smoke could be released from the cellhouse. [DE 97 at 5].

After Griffith was removed from the cellhouse, Sgt. Bass directed custody staff to perform cell-to-cell wellness checks to see if any other inmates needed immediate medical attention. [DE 83-13 at 3]. Any inmate who complained he had difficulty breathing was immediately removed from his cell and taken to the medical unit, while any inmate with a less serious complaint had his name taken down on a list for a medical check-up at a later time. *Id.* Both defendants attest they do not recall speaking with Jenkins during the wellness checks, but Jenkins asserts he personally told both defendants he needed medical attention because "my chest is hurting and my eyes are burning." [DE 83-13 at 3; DE 83-14 at 2; DE 97 at 6]. Jenkins was not seen by a nurse until January 11, when he was treated for chest pain which the nurse stated was caused by smoke inhalation. [DE 97 at 6].

The defendants argue summary judgment is warranted in their favor because they were not deliberately indifferent to Jenkins' welfare, but rather took reasonable steps to respond to the fire and reduce the risk of harm. [DE 86 at 10-12]. Jenkins responds the defendants were deliberately indifferent for leaving him locked in his cell

5

throughout the fire, as they should have electronically unlocked all the cell doors and evacuated all the inmates from the cellhouse while responding to the fire. [DE 97].

Here, no reasonable jury could conclude the defendants were deliberately indifferent to Jenkins' welfare, as the undisputed facts show they took reasonable steps to ensure his safety once the fire started. Specifically, it is undisputed the defendants responded reasonably to the fire by immediately calling a Signal 10-71, putting out the fire with fire extinguishers, calling a Signal 3000 emergency, opening Griffith's cell and removing him from the cell, instructing inmate firefighters to use exhaust fans to disperse the smoke, and performing cell-by-cell wellness checks of each inmate on the range. By taking reasonable steps to respond quickly to the fire and ensure all inmates on the range received necessary medical care, the defendants exhibited concern for all inmates in the cellhouse. *See Stockton*, 44 F.4th at 615.

While Jenkins suggests the defendants should have electronically opened all the cell doors and evacuated all the inmates from the building while responding to the fire, their failure to do so was not deliberately indifferent, particularly as evacuating the inmates in this manner could have complicated the situation, created additional safety hazards, and limited the ability of the defendants to respond adequately to the fire. Jenkins also argues the defendants' decision not to evacuate the building violated IDOC's "Fire Procedures" checklist [DE 97 at 1, 3], but it is not clear this procedure instructed the defendants to evacuate the entire building due to a fire in only one cell. [*See* DE 60-1 at 225 (specifying that "custody and control" must be maintained during a fire and "Security must be maintained during a fire, regardless of the confusion and

6

movement, due to the high possibility of an escape during this time.")]. Regardless, even assuming the defendants violated this procedure, this does not show an Eighth Amendment violation where the undisputed facts show they took reasonable steps to respond to the fire. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (holding that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). Accordingly, because it is undisputed the defendants took reasonable steps to respond to the fire and ensure Jenkins' safety, no reasonable jury could conclude the defendants were deliberately indifferent in responding to the fire on December 17.

Lastly, it could be argued the defendants were deliberately indifferent to Griffith's *threat* to set his cell on fire before any fire actually was started. Jenkins does not directly raise this argument in his response to the summary judgment motion, but he does provide evidence Sgt. Bass knew Griffith had threatened to set his cell on fire and had reason to take the threat seriously. However, prison officials only violate an inmate's Eighth Amendment rights if they expose him "to *a substantial risk* of a serious physical injury." *See Smith*, 631 F.3d at 421 (emphasis added). The Seventh Circuit has equated a "substantial risk" to a risk so great it is "almost certain to materialize" if nothing is done. *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). Here, accepting as true that Griffith told Sgt. Bass that he would set his cell on fire if he didn't receive his food tray, there is no evidence Sgt. Bass knew this threat posed a "substantial risk" to Jenkins' safety such that the risk was "almost certain to materialize" if nothing was done. *See Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) ("Prisoners

7

can be manipulative, using deceit to obtain advantages; guards are accordingly entitled to be skeptical"). Additionally, Griffith's cell was two floors away from Jenkins' cell and not in the immediate vicinity of any fire. Because there is no evidence in the record by which a reasonable jury could conclude the defendants exhibited a total unconcern for Jenkins' welfare, summary judgment is warranted in favor of the defendants on this claim.

   2. *Serious medical need*

Jenkins is also proceeding against the defendants for violating his Eighth Amendment rights by failing to provide him medical aid following severe smoke inhalation on December 17, 2021. The Eighth Amendment entitles inmates to constitutionally adequate medical care and prevents prison officials from being deliberately indifferent to a prisoner's serious medical need. *Farmer*, 511 U.S. at 834. As discussed above, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton*, 44 F.4th at 615.

Here, it is undisputed the defendants performed cell-to-cell wellness checks on each inmate in the affected area once the fire was put out. It is also undisputed that any inmate who complained about difficulty breathing was immediately removed from his cell and sent to the medical unit, while any inmate who presented a less serious complaint was added to a list of inmates who would receive treatment at a later date. Jenkins argues only that he told the defendants his "chest is hurting" and "eyes are

8

burning," and does not claim he ever reported any difficulty breathing to the defendants. [DE 97 at 6]. Therefore, the defendants acted reasonably by prioritizing sending inmates who reported difficulty breathing to the medical unit and placing inmates like Jenkins with less serious complaints on a list to receive medical care later. This conduct did not show "a total unconcern" for Jenkins' welfare. While Jenkins argues he was not seen by a nurse until January 11 for his complaints of chest pain, there is no evidence the defendants were responsible for this delay in scheduling Jenkins to see a nurse. Accordingly, because it is undisputed the defendants checked on Jenkins after the fire and prioritized sending other inmates with more serious complaints to the medical unit, no reasonable jury could conclude the defendants exhibited "a total unconcern" for Jenkins' welfare by denying him needed medical care. Summary judgment is therefore warranted in favor of the defendants on this claim.

Lastly, Jenkins filed two additional motions that must be addressed. First, Jenkins filed a motion for *in camera* review of certain exhibits, which he claims will show the defendants knew of Griffith's threat to set his cell on fire. [DE 96]. Because the court has considered these exhibits in their entirety and has construed these facts in Jenkins' favor, this Motion [DE 96] will be denied as moot.

Second, Jenkins filed a Motion for Appointment of Counsel. [DE 101]. But there is a fully briefed summary judgment motion before the court, and appointing counsel now would not alter the outcome of this case. Summary judgment will be granted – whether Jenkins has counsel or not. Therefore, the Motion for Counsel [DE 101] will be denied.

For these reasons, the court:

(1) **DENIES AS MOOT** Jenkins' Motions for *in camera* review [DE 96] and appointment of counsel [DE 101];

(2) **GRANTS** the defendants' Motion for Summary Judgment [DE 82]; and

(3) **DIRECTS** the Clerk to enter judgment in favor of the defendants and against Rodney Kinta Jenkins and to close this case.


ENTERED this 10th day of July, 2025.

/s/ Andrew P. Rodovich  
United States Magistrate Judge